# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

GERALD BULLOCKS,

    Plaintiff,

v.

C/O KEATING, et al.,

    Defendants.

Case No. 1:17-cv-440

Barrett, J.
Bowman, M.J.

## REPORT AND RECOMMENDATION

Plaintiff, an incarcerated individual who proceeds *pro se*, filed suit against two correctional officers. Upon initial screening, his complaint was construed as alleging that two Defendant Correctional Officers at the Southern Ohio Correctional Facility ("SOCF") violated his Eighth Amendment rights. Pursuant to local practice, this case has been referred to the undersigned magistrate judge.

Seven motions are currently pending, including cross-motions for summary judgment and what the undersigned construes as a motion to voluntarily dismiss one of the two Defendants. In this Report and Recommendation, I recommend that Plaintiff's construed motion to voluntarily dismiss Defendant Frye (a/k/a "Fri")[1] and Defendants' motion for summary judgment be granted, and that Plaintiff's motion for summary judgment be denied. Plaintiff's remaining four motions will be addressed by separate Order.

---

[1] Plaintiff's complaint spells the Defendant's name as "Frye" but Defendant states that the correct spelling of his surname is "Fri." For consistency, this R&R uses the correct spelling "Fri" in place of Plaintiff's misspelling.

## I. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986). The moving party has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986).

Once the moving party has met its burden of production, the nonmoving party cannot rest on the pleadings, but must present significant probative evidence in support of his case to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 248-49. The mere scintilla of evidence to support the nonmoving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party. *Id.* at 252. As Plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005). However, his status as a pro se litigant does not alter his burden of supporting his factual assertions with admissible evidence when faced with a summary judgment motion. *Maston v. Montgomery Cnty. Jail Med. Staff Personnel*, 832 F. Supp. 2d 846, 851-52 (S.D. Ohio 2011) (citing *Viergutz v. Lucent Techs., Inc.*, 375 Fed. Appx. 482, 485 (6th Cir. 2010)).

In this case, both Plaintiff and Defendants are moving parties. The undersigned

has evaluated each of the respective motions for summary judgment according to the above standards of review. Because the undersigned has concluded that Defendants' motion should be granted, the undersigned has construed all reasonable factual inferences in Plaintiff's favor.

## II. Allegations in Complaint and Procedural Background

The undersigned begins with a review of the allegations contained in Plaintiff's complaint and the pending motions. Plaintiff's complaint alleges that he was escorted to the J-2 segregation "strip search cage" at SOCF on December 26, 2015 following an earlier "incident" that occurred in the kitchen. At the time he was placed in the strip cage, Plaintiff was voicing his complaint that the escort officer had used excessive force against him. (Doc. 3 at 1). He alleges that C/O Keating proceeded to dispense OC spray "for no apparent reason while I was in cuffs and not posing no physical threat to officers or myself as a result I had a 'seizure-like attack,' fell to the ground until I partially recovered." (*Id.*)

Plaintiff's original complaint further alleges that Defendant Correctional Officer Fri was present and failed to protect Plaintiff from harm, and that both Defendants filed false incident reports. He alleges that Keating also filed a false conduct report that was later dismissed. Plaintiff alleges he "was not properly decontaminated of the OC spray and was left to burn and suffer from the mitigating effects by being placed in a shower with only hot water as the control unit for the showers are control[led] by the officers from inside the officers['] control booth." (*Id.*) Plaintiff alleges that as a result of the OC spray, he "was unable to open my eyes for 24 hrs and my face was left blistered." (*Id.*) He alleges that he did not receive medical attention until four days later.

After a period of discovery, Plaintiff filed a two-page motion for summary judgment.

(Doc. 20). Plaintiff formally moved for leave to amend his motion for summary judgment in order to include the following exhibits: (1) a statement titled "affidavit" signed by Plaintiff that details his attempts to obtain discovery; (2) a "use of force" statement made by Defendant Keating; and (3) Defendant Keating's responses to Plaintiff's second set of interrogatories. (*See* Doc. 23, Motion to Amend/Correct Motion for Summary Judgment and Doc. 23-1 (exhibits)).

On June 15, 2018, prior to any response to his motion being filed by Defendants, Plaintiff prematurely filed a "reply" in which he included additional exhibits for the Court's consideration: (1) an Incident Report completed by Defendant Keating on 12/26/15; (2) an Incident Report completed by Officer Andre; and (3) Defendant Keating's responses to Plaintiff's Requests for Admissions. (*See* Doc. 26 and 26-1 (exhibits)). On June 22, 2018, Plaintiff filed a motion "for leave to amend" his reply memorandum to include: (1) an Incident Report by Officer Taber; (2) a Supervisor's Use of Force Summary Report; and (3) an Incident Report by Defendant Officer Fri. (Doc. 28).

On June 28, 2018, Defendants filed a response in opposition to Plaintiff's motion for summary judgment, as amended, as well as a cross-motion for summary judgment. (Docs. 29, 30). Realizing his error in prematurely filing an unauthorized "reply" memorandum (and amendment thereto), Plaintiff moved to strike the earlier reply in order to file a new reply to Defendant's response in opposition to his motion for summary judgment. (Doc. 34). The undersigned grants, but only in part, Plaintiff's motion to strike the earlier reply memoranda filed of record on June 15, 2018 and on June 22, 2018. Neither of the premature reply memoranda have been considered in connection with the pending motions for summary judgment. In order to maintain a complete record,

4

however, the undersigned has elected not to strike the documents.

On August 15, 2018, Plaintiff filed a response in opposition to Defendant's motion for summary judgment and a reply memorandum in support of his own motion, together with a Declaration that mirrors the allegations in his complaint. (Docs. 35, 36, 37). On August 27, 2018, Defendants filed their reply. (Doc. 38).

In addition to the referenced documents and motions, Plaintiff has filed a motion to amend/correct his complaint, to which the Defendants filed no response. (Doc. 19). Plaintiff's motion to amend his complaint is more properly construed as a motion to voluntarily dismiss Correctional Officer Fri, as that is the sole "amendment" sought. (*Id.*) Plaintiff explains that upon review of the video footage of the incident, "Plaintiff has determined that [Fri] was not involved in [the] incident…and should be removed from [the] complaint and suit all together." (*Id.*)

Plaintiff's construed motion to dismiss Defendant Fri should be granted. Because the undersigned construed Plaintiff's complaint as accusing Officer Fri of a failure to protect him from Officer Keating, Plaintiff's construed "failure to protect" claim also should be dismissed.

### III. Findings of Fact

On December 26, 2015, shortly before the incident that forms the basis for his complaint, Plaintiff was involved in an altercation with another inmate in the vicinity of the SOCF cafeteria. Aspects of the earlier altercation are relevant to this proceeding, including that Plaintiff was sprayed with 23 grams of OC pepper spray during the earlier

incident.² Plaintiff was escorted to the strip cage at the J-2 holding area at SOCF by Officers Dotson and Tabor using "escorting techniques" due to Plaintiff's resistance during the escort. (Doc. 29-2 at 6). The J-2 strip cage is used to temporarily hold inmates with soiled clothing prior to their transfer to another area of the prison, including disciplinary segregation housing. The cage has a small handcuff port in the middle of the door so that restrained inmates can have their handcuffs removed while they change into a fresh set of clothes.

A video recording of the incident shows Bullocks arriving in J-2 and being placed in the strip cage. Officer Keating closes the door to the cage at 16:35:53. Although no audio accompanies the images, it is apparent that Plaintiff and Defendant Keating are facing one another, separated only by the open bars of the cage, and that Defendant is speaking to Plaintiff.³ Defendant has attested that he gave Plaintiff at least two verbal orders to turn around and face the wall while extending his handcuffed arms behind him toward the handcuff port, so that Defendant could uncuff Plaintiff in accordance with the normal procedure. The angle of the camera and quality of the image make it difficult to observe every movement by Plaintiff in the dimly lit holding cell, but there is no dispute that during the 16-17 second period during which Defendant spoke to Plaintiff, Plaintiff did not turn around to face the wall. Defendant Keating states that not only did Plaintiff refuse by his actions to turn around, but that he was verbally combatant, using language

---

²OC stands for Oleoresin Capsicum, the active ingredient in pepper spray.
³Given that Plaintiff has moved to voluntarily dismiss Defendant Fri, all further references to a singular "Defendant" in this R&R refer to Officer Keating. However, because the motion for summary judgment was filed on behalf of both Defendants, the undersigned continues to refer to the Defendants (plural) in that context.

to the effect of "fuck you bitch ass cops… I've already been sprayed so I don't give a fuck about that spray. I'll spit in your fucking face." (Doc. 29-3 at ¶5). Plaintiff also made a "hocking" noise which Defendant perceived to be an indication that Plaintiff was preparing to spit at him. (*Id*). Defendant was aware that Plaintiff had a poor disciplinary reputation for defying orders and spitting at both other inmates and other correctional officers.[4] (*Id.* at ¶6).

At 16:37:09, Defendant Keating dispensed a one-second burst of OC spray, amounting to 12 grams. Defendant states that he did so to prevent Plaintiff from spitting at him and to compel his compliance with the order to turn around. Officer Andre (wearing a white shirt) can be seen on the same video. Defendant has submitted his Declaration, which is entirely consistent with the account that Keating twice ordered Plaintiff to turn around to be uncuffed, that Plaintiff twice ignored him, and that Plaintiff made verbal threats and hocking noises. (Doc. 29-5; *see also* Doc. 29-2 at 8, Incident Report). In addition, Defendants have offered evidence of similar near-contemporaneous accounts by other witnesses, including Incident Reports by Lt. Boggs, Officer Tabor, and Officer Fri, generated during the Use of Force report. (Doc. 29-2 at 6, 9, 10).

After Defendant deployed the short burst of OC spray, he stepped away from the bars and Officer Andre stepped closer to the bars of the cage. Officer Andre can be seen holding a can of OC spray, and Plaintiff appears to be briefly sitting on the ground. Plaintiff has filed a Declaration stating that he fell to the ground after suffering a "seizure like

---

[4] Defendants have offered evidence of Plaintiff's extensive disciplinary history since 2008, including more than 100 RIB convictions, of which 15 were listed as Rule 21 violations for "disobedience of a direct order." (Doc. 29-6).

attack" after being sprayed. (Doc. 35). Regardless of the reason for Plaintiff's position on the ground, he did not stay there for more than 30-40 seconds. Thereafter, Plaintiff stands back up and turns around to be uncuffed. He next changes into the fresh set of clothes provided to him. Immediately after Plaintiff changed his clothes, Officer Andre and Officer Fri escorted Plaintiff to the decontamination shower. (Doc. 29-5). Plaintiff asserts that he was not able to "properly" decontaminate himself because he was "placed in a shower with only hot water…." (Doc. 35).

Plaintiff claims that he was "unable to open my eyes for 24 hours and my face was left blistered due to being sprayed." He further alleges that his symptoms were "documented" on December 30, 2015 when he was finally provided medical attention. (Doc. 35). However, Plaintiff's account is not "reasonable" in view of the lack of any report, dated December 30, 2015 or otherwise, that documents any eye or facial injury. In contrast to Plaintiff's allegation, Defendants have tendered a medical examination report generated on December 26, 2015, less than an hour after the incident, documenting that Plaintiff appeared to be in no distress and had no injuries, and stated "I'm fine" to the examining nurse. (Doc. 29-2 at 12).

The record reflects that Defendant Keating initially submitted a Conduct Report against Plaintiff but that it was later withdrawn. (Doc. 29-7). Plaintiff argues that the fact that he was not convicted of a disciplinary violation from the strip cage incident is proof that he did not disobey Defendant Keating's direct order. However, Defendants have offered unrebutted evidence that the withdrawal of Keating's report was based on the submission of a Conduct Report with more serious charges over the cafeteria altercation that immediately preceded the strip cage incident. Plaintiff was convicted of multiple

8

prison violations arising from that first Conduct Report. Disciplinary staff generally review only a single Conduct Report when there is a closely-related chain of events as presented in this case. (Doc. 29-4, Declaration of Sgt. Sammons). Nevertheless, the Use of Force Committee made findings that were consistent with Defendant Keating's account in the Conduct Report, as well as with Keating's and other witnessses' accounts of the incident. (*Id.*)

IV. **Analysis**

A. **Eleventh Amendment Immunity Bars Any Official Capacity Claims**

For the reasons expressed in their motion, Defendants are entitled to judgment as a matter of law on any claims that Plaintiff asserts against them in their official capacity. Such claims are barred by the Eleventh Amendment. *See generally Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Hall v. Medical College of Ohio at Toledo*, 742 F.2d 299 (6th Cir. 1984).

B. **Judgment Should be Granted on Eighth Amendment Claims**

1. **The Components of an Eighth Amendment Claim**

An Eighth Amendment excessive force claim has both a subjective and an objective component. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014). The subjective component focuses on "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.*; *see also Hudson v. McMillian*, 503 U.S. 1, 6, 112 S. Ct. 995 (1992). In making this inquiry, the Court must consider the need for the use of force; the relationship between that need and the type and amount of the force used; the threat reasonably perceived by the official; and the extent of the injury inflicted. *Hudson*, 503 U.S. at 7; *Whitley v. Albers*, 475 U.S.

312, 320 (1986). The Eighth Amendment does not prohibit a de minimis use of force "provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 501 U.S. at 10 (quoting *Whitley*, 475 U.S. at 327) (internal quotations omitted).

The objective component requires the "pain inflicted to be 'sufficiently serious'" to offend "contemporary standards of decency." *Cordell*, 759 F.3d at 580 (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), and *Hudson*, 503 U.S. at 8). "While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Id.* at 580-81. "'When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated ... [w]hether or not significant injury is evident.'" *Hudson*, 503 U.S. at 9. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.* At the same time, courts have repeatedly explained that "not… every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "Not every push or shove, even if it may later seem unnecessary n the peace of a judge's chambers, violates a prisoner's constitutional rights." *Pelfrey v. Chambers*, 43 F.3d 1034, 1039 (6th Cir. 1995) (internal quotation marks and citation omitted).

### 2. No Evidence Supports Either Subjective or Objective Elements of Plaintiff's Eighth Amendment Claims

To survive summary judgment in this case, Plaintiff must at a minimum present evidence establishing that Defendant did not have a good faith basis for employing OC spray, and that the harm he suffered was objectively "serious." However, the record

reflects not only a lack of injury, but more importantly, the type of force that, in context, itself appears to be so de minimis as to be insufficient to prove the objective element of Plaintiff's claim.  Plaintiff complains only of an incident in which a single guard can be seen on videotape very briefly (for approximately one second) spraying Plaintiff with pepper spray.  Multiple declarations as well as documentary evidence reflect that Keating deployed his OC spray in response to Plaintiff's failure to comply with a direct order to turn around and a perceived spitting threat.

In his response to Defendant's motion, Plaintiff first asserts that Defendant sprayed him "within 7 to 10 seconds of Plaintiff entering" the cage, which Plaintiff argues is inconsistent with the otherwise overwhelming evidence supporting Keating's account, based on Plaintiff's view that it would be "impossible for so many words to be exchanged between the [Defendant and Plaintiff] in such a short time frame."  (Doc. 26).  The undersigned does not agree.  Having closely reviewed the video record, the undersigned finds that approximately 16 seconds elapsed between the time that Keating closed the door to the cage and the time that he used OC spray.  Even if (contrary to all evidence) a shorter time period had elapsed, the undersigned cannot agree that a time span of 10 seconds or less is incompatible with the conclusion that Defendant gave a direct order with which Plaintiff refused to comply.

Plaintiff next argues that the video reflects an inconsistency in Defendant's account that he did not remove his canister of OC spray from his holster until *after* Plaintiff refused his order.  According to Plaintiff, Defendant immediately removed the can of OC spray from his holster, prior to Plaintiff being place in the cage.  Assuming for the purpose of

11

the pending motion that Plaintiff is correct,[5] any minor inconsistency does not yield a "reasonable" inference that Defendant violated Plaintiff's constitutional rights. Indeed, given the evidence that Plaintiff continued to resist after his earlier altercation during his escort to the J-2 cage, that Plaintiff was verbally complaining about the escorting officer(s) while being placed in the cage, and Plaintiff's history of disciplinary offenses, it would not be surprising if Defendant had held his canister of spray at the ready.[6] Still, the record clearly shows that he did not immediately deploy OC spray but held the can for approximately 16 seconds while verbally engaging Plaintiff, prior to deploying a very brief (less than one second) burst without any additional force used.

Plaintiff argues that the fact that the withdrawal of Defendant's Conduct Report against him should be viewed as proof that Plaintiff was "not guilty" of disobeying an order or of making any attempt to spit at Defendant Keating. However, the Conduct Report was never adjudicated by the Rules Infraction Board. The explanation offered by Defendants as to why the report was withdrawn (in favor of adjudication of more serious offenses) has not been refuted. The evidence that Defendant Keating believed Plaintiff was refusing to comply with his order to turn around, and/or that Keating reasonably believed Plaintiff was threatening to spit, also is unrefuted.

In Plaintiff's own motion for summary judgment as well as in his response in opposition to Defendants' motion, he focuses on the quantity of OC spray (12 grams),

---

[5]The canister is held in Defendant's right hand, which is out of the camera's view when Plaintiff first enters the cage. The undersigned therefore cannot be certain of the location of the canister of OC spray based on the video evidence.

[6]The video record also shows that Officer Andre held his can of spray raised and at the ready shortly after Defendant Keating deployed his spray. However, Officer Andre continued to simply hold his cannister without deploying it, since Plaintiff rose to his feet and complied with the order to turn around.

12

released, which he argues is "beyond the standard amount of mace." (Doc. 20 at 2; Doc. 23). However, there is simply no factual or legal support for the proposition that an officer's deployment of a <u>one-second</u> burst of OC spray in response to a perceived failure to comply with a direct order and/or a perceived spitting threat, could ever satisfy the objectively serious standard, much less that it did so in this case. There is no suggestion that Defendant Keating somehow altered his canister of OC spray in order to release an unusual or excessive amount of spray per second. "[A] short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey an order." *Easley v. Little*, Case No. 1:14-cv-891, 2016 WL 4006676 at *7 (S.D. Ohio June 28, 2016); *see also Brown v. Eagleton*, Case No. 4:14-cv-0357, 2015 WL 5781504 (S. C. 2015) (holding that discharge of 12 grams of pepper spray to inmate locked in cell was not unconstitutional but reflected a relatively tempered response, rejecting idea that prison officials may not use chemical spray on disruptive prisoner locked in cell).

Plaintiff maintains that various injuries were "documented" by a nurse on December 30, 2015. However, Plaintiff has not offered any such documentary evidence. Plaintiff's unsupported argument is insufficient to overcome summary judgment in light of the evidence of record; namely, a medical examination report dated less than an hour after the incident that reflects no injuries or distress.[7] (Doc. 29-2 at 12). For similar reasons, the undersigned rejects as insufficient to overcome summary judgment Plaintiff's recent assertion that he suffered a "seizure like attack and fell to the ground until he was able to gain consciousness." (Doc. 36 at 2). The image on the video is not clear enough

---

[7]Because Plaintiff offers no evidentiary support, the undersigned also rejects Plaintiff's argument that the December 26, 2015 medical examination report was fabricated by SOCF officials. (*See* Doc. 36 at 3).

to reveal the presence or absence of any "seizure like" activity but does reflect that Plaintiff stood back up less than a minute after he is observed on the ground, and proceeded to comply with the directive to turn around. There is no indication that Plaintiff ever lost consciousness which assertion in opposition to summary judgment is completely undermined by the video evidence and medical examination report.

Plaintiff's Eighth Amendment claim that he was denied medical attention for four days is flatly contradicted by the evidence of the medical examination conducted within an hour of the incident. (Doc. 29-2 at 12). Contrary to Plaintiff's allegations and argument,[8] the report reflects no injuries or distress and Plaintiff's subjective statement that he was "fine." (*Id.*)

Plaintiff does not dispute that he was offered a decontamination shower immediately after the incident. Additionally, Defendant Keating had no further involvement with Plaintiff after deploying the OC spray; Officer Andre and Fri escorted Plaintiff to the decontamination shower. Although Plaintiff complains that the water was too hot, there is no evidence (and he does not even allege) that Defendant Keating had anything to do with the water temperature.

As the undersigned explained in a similar pepper spray case:

> To be clear, when pepper spray or some other chemical agent is used against a prisoner, that use of force might support the objective component of an Eighth Amendment claim when combined with other force (i.e., a "violent extraction"), or if the spray was used for an excessive length of time, employed in some obviously malicious manner, or under circumstances that demonstrate a more objectively significant incident. *See e.g., Freeman v. Collins*, 2009 WL 414325 (S.D.OH Feb. 17, 2009) (denying qualified immunity to officer who sprayed inmate with mace based on disputed

---

[8]Plaintiff also does not allege that he immediately asked *Defendant Keating* to take him for a medical exam, or that Defendant Keating had anything to do with the alleged four-day delay in his examination.

issues; inmate had medical documentation prohibiting use of chemical agents, and allegedly was denied medical treatment after the incident). However, on the record presented in this case, where it is clear that some manner of threat by Plaintiff occasioned the briefest reactive use of pepper spray by a single prison guard, with no other force used by that guard or by anyone else, the undersigned concludes that the force used was akin to a "push or shove" that causes "no discernible injury" and that falls short of what is required to state a valid Eighth Amendment claim.

*Thompson v. Joseph*, Case No. 1:12-cv-992, 2014 WL 1685918 (S.D. Ohio, April 29, 2014), R&R adopted at 2014 WL 2172894 (discussing OC spray cases and granting summary judgment in light of evidence that use of force was *de minimis* because it was in response to the inmate's verbal threat and/or attempt to spit); *accord Easley v. Little*, 2016 WL 4006676 at *7 (citing *Jennings v. Mitchell*, 93 Fed. Appx. 723, 724 (6th Cir. 2004) and similar pepper spray cases and holding that "a short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a direct order").

In his Declaration,[9] Plaintiff does not deny that he did not immediately turn around in the strip cell, as would be required under normal procedure, and as he eventually is observed doing after being briefly sprayed by Defendant. He also does not deny making a hocking sound or verbally threatening to spit. However, Plaintiff maintains that based upon the undisputed facts that he was physically in the cage and handcuffed at the time,

---

[9]Only in his responsive memorandum does Plaintiff argue for the first time that "[a]t no point and time was Plaintiff disrespectful to officers nor attempted to spit on or at Mathew Keating, nor did he refuse to follow any direct orders." (Doc. 36). In the absence of any *evidence*, testamentary or otherwise, Plaintiff's argument is wholly inadequate to overcome the overwhelming evidence presented by Defendants that the use of OC spray was based on Plaintiff's refusal to turn around at Keating's direction, and/or his verbal threat to spit. Even if there were a genuine dispute of material fact regarding whether Plaintiff actually disobeyed an order or verbally threatened to spit, Defendant Keating still would be entitled to judgment based upon the lack of any dispute concerning Defendant's subjective belief and intent when deploying the spray.

15

he could not have posed a "physical threat" to any officers such that *any* use of OC spray under the circumstances was unreasonable and unconstitutional. Plaintiff is wrong. Eighth Amendment standards permit the use of pepper spray in order to force an inmate to comply with an order, or to reduce a spitting threat. On similar facts, the undersigned repeatedly has recommended that summary judgment be granted. *See generally, e.g., McDougald v. Dillow*, Case No. 1:16-cv-1099 (S.D. Ohio Aug. 2, 2018) (summary judgment granted to defendants for short use of pepper spray); *McDougald v. Erdos*, Case No. 1:17-cv-95, 2018 WL 3772181 (S.D. Ohio Aug. 9, 2018) (same); *Thompson v. Esham*, Case No. 1:15-cv-553, 2018 WL 398439 (S.D. Ohio Jan. 12, 2018) (summary judgment granted despite use of multiple short bursts of pepper spray); *Payne v. Gifford*, Case No. 1:16-cv-514, 2017 WL 4329631 (S.D. Ohio Sept. 5, 2017) (holding that one-second use of pepper spray demonstrated neither subjective nor objective components of Eighth Amendment claim); *Smith v. Bigham*, 2018 WL 2100518, at *6 (S.D. Ohio 2018); *Phillips v. Sammons*, Case No. 1:16-cv-1034 at *11 (S.D. Ohio Jan. 11, 2018) (granting summary judgment where officer deployed chemical spray for less than two seconds).

### 3. Qualified Immunity

In the unlikely event that a reviewing court would conclude that the objective or subjective components of an Eighth Amendment claim could be satisfied on based on the de minimis amount of force and facts presented, Defendant Keating still would be entitled to qualified immunity. The purpose of qualified immunity is to provide governmental officials with the ability "reasonably to anticipate when their conduct may give rise to liability for damages." *See Anderson v. Creighton*, 483 U.S. 635, 646 (1987) (internal

quotation omitted). Thus, a governmental official performing discretionary functions will be entitled to qualified immunity unless his actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A governmental official is entitled to immunity if the facts alleged do not make out a violation of a constitutional right, or if the alleged constitutional right was not clearly established at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 129 S.Ct. 808 (2009).

When a defendant moves for summary judgment based on qualified immunity, the official must first show that he acted within discretionary authority. *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). Once an official makes this showing, the burden shifts to the plaintiff to prove that the officer violated a right so clearly established that any reasonable official in that position would have understood it was unreasonable to engage in the conduct that violated the right. *Id.* Here, Plaintiff has made no claim that any Defendant was acting outside his authority. Thus, the burden has shifted to the Plaintiff to prove that by administering OC spray for one second under the facts presented violated Plaintiff's clearly established Eighth Amendment right. For the reasons discussed, Plaintiff has not demonstrated either the objective or subjective components of his Eighth Amendment claim under clearly established law. *Accord Smith v. Bigham*, 2018 WL 2100518, at *8 (S.D. Ohio 2018) (holding that correctional officer was entitled to qualified immunity based upon lack of any injury from secondary exposure to pepper spray).

Because Defendant Keating had nothing to do with any delay in a medical exam or the water temperature of the decontamination shower (and arguably even if Plaintiff

had properly pleaded that he did), he is also entitled to qualified immunity on any of those claims. *Id.* (granting qualified immunity because plaintiff did not allege that he sought medical treatment from the named defendant, and because the lingering effects of OC spray did not suggest a sufficiently "serious" condition for which any lay person would have recognized the need for medical attention); *see also* generally, *Ratcliff v. Moore*, 614 F. Supp.2d 880 (S.D. Ohio 2009).

Finally, even if Plaintiff's claims against Defendant Fri were to be considered, that Defendant would be entitled to qualified immunity based upon his undisputed lack of involvement in the incident at issue.

### V. Conclusion and Recommendations

Accordingly, **IT IS RECOMMENDED THAT:**

1. Plaintiff's motion to amend his complaint (Doc. 19) should be construed as a motion to dismiss all claims against Defendant Fri (a/k/a "Frye") and should be GRANTED, with all claims against that Defendant, including Plaintiff's "failure to protect" claim, to be dismissed;

2. In addition (and alternatively as to Defendant Fri alone), Defendants' motion for summary judgment on all claims presented (Doc.30) should be GRANTED;

3. Plaintiff's motion for summary judgment, together with Plaintiff's construed amendment to that motion, (Docs. 20, 23) should be DENIED, and this case should be closed.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| GERALD BULLOCKS, | Case No. 1:17-cv-440 |
| Plaintiff, | Barrett, J. |
| | Bowman, M.J. |
| v. | |
| C/O KEATING, et al., | |
| Defendants. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).